## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 4:23-CR-553-S |
| | § | |
| DARUIN ANELBY ROSARIO, | § | |
| Defendant. | § | |

## PLEA AGREEMENT

The United States of America, by and through Alamdar S. Hamdani, United States Attorney for the Southern District of Texas, and Luis Batarse, Assistant United States Attorney, and the defendant, Daruin Anelby Rosario ("Defendant"), and Defendant's counsel, pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### Defendant's Agreement

1. Defendant agrees to plead guilty to Counts 1, 2, and 4 of the superseding indictment. Count 1 charges Defendant with Possession of Stolen Mail, in violation of Title 18, United States Code, Section 1708. Count 2 charges Defendant with Unlawful Possession of a Postal Key, in violation of Title 18, United States Code, Section 1704. Count 4 charges Defendant with Aggravated Identity Theft, in violation of Title 18, United States Code, Section 1028A. Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes

essential to the punishment either charged in the superseding indictment, or proved to a jury or proven beyond a reasonable doubt.

## Punishment Range

2. The **statutory** maximum penalty for each violation of Title 18, United States Code, Section 1708, is imprisonment of not more than five years and a fine of not more than $250,000. The statutory maximum penalty for each violation of Title 18, United States Code, Section 1704, is imprisonment of not more than ten years and a fine of not more than $250,000. The statutory maximum penalty for each violation of Title 18, United States Code, Section 1028A is imprisonment of two years consecutive to any other related term and a fine of not more than $250,000. Additionally, Defendant may receive a term of supervised release after imprisonment of not more than three years for Counts 1 and 2, and one year for Count 4. *See* Title 18, United States Code, Sections 3559(a)(3), (4) and (5), and 3583(b)(2) and (3). Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for not more than two years for Counts 1 and 2, and not more than one year for Count 4, without credit for time already served on the term of supervised release prior to such violation. *See* Title 18, United States Code, Sections 3559(a)(3) or (4) and 3583(e)(3). Defendant

understands that the sentences on multiple counts may be imposed to run consecutively to one another or to any other sentence. Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

## Mandatory Special Assessment

3.    Pursuant to Title 18, United States Code, Section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

## Immigration Consequences

4.    Defendant recognizes that pleading guilty may have consequences with respect to his immigration status. Defendant understands that if he is not a citizen of the United States, by pleading guilty he may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant understands that if he is a naturalized United States citizen, pleading guilty may result in immigration consequences, such as denaturalization and potential deportation or removal from the United States. Defendant's attorney has

advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty, and Defendant affirms that he wants to plead guilty regardless of any immigration consequences that may result from the guilty plea and conviction.

## Cooperation

5. The parties understand this agreement carries the potential for a motion for departure under Section 5K1.1 of the Sentencing Guidelines. Defendant understands and agrees that whether such a motion is filed will be determined solely by the United States through the United States Attorney for the Southern District of Texas. Should Defendant's cooperation, in the sole judgment and discretion of the United States, amount to "substantial assistance," the United States reserves the sole right to file a motion for departure pursuant to Section 5K1.1 of the United States Sentencing Guidelines. Defendant further agrees to persist in that plea through sentencing, fully cooperate with the United States, and not oppose the forfeiture of assets contemplated in paragraph 21 of this agreement. Defendant understands and agrees that the United States will request that sentencing be deferred until that cooperation is complete.

6. Defendant understands and agrees that "fully cooperate," as that term is used herein, includes providing all information relating to any criminal activity

known to Defendant, including but not limited to theft, fraud, drugs, and illegal firearms. Defendant understands that such information includes both state and federal offenses arising therefrom. In that regard:

(a)     Defendant agrees that this plea agreement binds only the United States Attorney for the Southern District of Texas and Defendant; it does not bind any other United States Attorney or any other unit of the Department of Justice;

(b)     Defendant agrees to testify truthfully as a witness before a grand jury or in any other judicial or administrative proceeding when called upon to do so by the United States. Defendant further agrees to waive his Fifth Amendment privilege against self-incrimination for the purpose of this agreement;

(c)     Defendant agrees to voluntarily attend any interviews and conferences as the United States may request;

(d)     Defendant agrees to provide truthful, complete and accurate information and testimony and understands any false statements made by the defendant to the Grand Jury or at any court proceeding (criminal or civil), or to a government agent or attorney, can and will be prosecuted under the appropriate perjury, false statement, or obstruction statutes;

(e)     Defendant agrees to provide to the United States all documents in his possession or under his control relating to all areas of inquiry and investigation; and

(f)     Should the recommended departure, if any, not meet Defendant's expectations, the Defendant understands that he remains bound by the terms of this agreement and cannot, for that reason alone, withdraw his plea.

## Waiver of Appeal, Collateral Review, and Statute of Limitations

7.  Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, Section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, Section 2255. In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

8.  Defendant also agrees that should the conviction following the defendant's plea of guilty pursuant to this Agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this agreement (including any counts that the United States has agreed to dismiss at sentencing pursuant to this Agreement) may be commenced or

6

reinstated against the defendant, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution. It is the intent of this Agreement to waive all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed.

9. In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from his counsel, the United States or the Probation Office, is a prediction and not a promise, did not induce his guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

7

10.  Defendant understands and agrees that each and all waivers contained in

the Agreement are made in exchange for the concessions made by the United States

in this plea agreement.

### The United States' Agreements

11.  The United States agrees to each of the following:

(a)    If Defendant pleads guilty to Counts 1, 2 and 4 of the
superseding indictment and persists in that plea through sentencing, and
if the Court accepts this plea agreement, the United States will move to
dismiss any remaining counts of the superseding indictment at the time
of sentencing. The defendant agrees that with respect to any and all
dismissed charges he/she is not a 'prevailing party within the meaning
of the 'Hyde Amendment,' Section 617, P.L. 105-119 (Nov. 26, 1997),
and will not file any claim under that law;

(b)    If the Court determines that Defendant qualifies for an
adjustment under U.S.S.G. § 3E1.1(a), and the offense level prior to
operation of § 3E1.1(a) is 16 or greater, the United States will move
under § 3E1.1(b) for an additional one-level reduction because
Defendant timely notified authorities of his or her intent to plead guilty,
thereby permitting the United States to avoid preparing for trial and
permitting the United States and the Court to allocate their resources
more efficiently.

### Agreement Binding - Southern District of Texas Only

12.  With the exception of the pending supervised release violation under

4:20-CR-635, the United States Attorney's Office for the Southern District of Texas

agrees that it will not further criminally prosecute Defendant in the Southern District

of Texas for the specific conduct described in the superseding indictment. This plea

8

agreement binds only the United States Attorney's Office for the Southern District of Texas and Defendant. It does not bind any other United States Attorney's Office. The United States Attorney's Office for the Southern District of Texas will bring this plea agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices, if requested.

## United States' Non-Waiver of Appeal

13.   The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

(a)   to bring the facts of this case, including evidence in the files of the United States Attorney's Office for the Southern District of Texas or the files of any investigative agency, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b)   to set forth or dispute sentencing factors or facts material to sentencing;

(c)   to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d)   to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, Section 3553(a); and

(e)   to appeal the sentence imposed or the manner in which it was determined.

## Sentence Determination

14. Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, Section 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

## Rights at Trial

15. Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

10

(a)     If Defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

(b)     At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court; and

(c)     At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, he could testify on his own behalf.

### Factual Basis for Guilty Plea

16.   Defendant is pleading guilty because he is in fact guilty of the charges contained in Counts 1, 2 and 4 of the superseding indictment. If this case were to proceed to trial, the United States could prove each element of the offense beyond a reasonable doubt. The following facts, among others would be offered to establish Defendant's guilt:

On July 6, 2023, United States Postal Inspector (USPIS) Andre received a complaint from the Richmond Police Department regarding an increase in theft/forgery cases received. The victims in the complaints advised they mailed checks from the USPS blue collection box in front of the Richmond Post Office

located at 5560 FM1640, Richmond, TX 77469. The mailed checks were stolen from the mail and did not make it to their intended destinations. The checks were negotiated causing a financial loss to the victims who placed their checks inside of the USPS blue collection box and/or inside of the outgoing mail slot inside of the Richmond Post Office.

After reviewing the complaint, Inspector Andre responded to the Richmond Post Office and inspected the USPS blue collection box. Inspector Andre observed there were no signs of forced entry to the USPS blue collection box. Based on his training and experience with mail theft investigations, accessing any mail receptacle without force is indicative that a USPS arrow key (master key) or counterfeit arrow key was likely used. An arrow key is a highly sought-after tool that criminals use to open USPS mail receptacles to steal mail to conduct other crimes primarily related to financial crimes and identity theft. An arrow key is property of the USPS and is a serialized master key and is cut specifically to access USPS receptacles. An arrow key is utilized by USPS employees, and it allows access to USPS mail receptacles (which includes CBUs) on a particular route. USPS arrow keys are only authorized to be used by USPS employees during scheduled work hours. Inspector Andre noted the time of the mail theft incidents were outside of normal USPS work hours.

On July 16, 2023, at approximately 8:27 pm, Inspector Andre received a

motion sensor alert from a USPS blue collection box located within the Southern District of Texas. The alert indicated that the access door to the collection box was opened. Inspector Andre reviewed the surveillance video during the time of the alert and observed a black four door Chevrolet Impala with chrome accents and tinted windows drive up to the USPS mailbox. Inspector Andre observed the front passenger of the vehicle (later identified as Daruin A. Rosario, hereafter ROSARIO) exit the vehicle and open the mailbox with a key. ROSARIO was observed removing the mail from inside the USPS mailbox and dumping it into the vehicle through the rear passenger side window. ROSARIO was observed locking the USPS mailbox before leaving the property in the same vehicle.

On July 24, 2023, at approximately 8:57 pm, Inspector Andre received a motion sensor alert from a USPS blue collection box located within the Southern District of Texas. The alert indicated that the access door to the collection box was opened. Inspector Andre reviewed the surveillance video during the time of the alert and observed a black four door Chevrolet Impala with chrome accents and tinted windows drive up to the USPS mailbox. Inspector Andre recognized this vehicle to be the same vehicle from the mail theft incident that occurred on July 14, 2023. Inspector Andre observed the same male suspect (ROSARIO) from the July 14, 2023, exit the vehicle. ROSARIO opened the mailbox with key, removed the mail

from within, and dumped it in the rear passenger seat through the rear passenger side window. ROSARIO was observed locking the USPS mailbox before leaving the property. The same activity was also captured on surveillance video on August 6, 2023.

During the investigation, Inspector Andre learned that on or about July 19, 2023, apartment management entered ROSARIO's apartment located within the Southern District of Texas pursuant to an eviction. Upon entry to the apartment, they observed the unit was vacated with miscellaneous items left behind. Of the items that were left behind, a small clear plastic shopping bag containing multiple personal and business checks in different names was found on the kitchen counter. The checks were addressed to and/or from multiple addresses within Richmond, TX and Rosenberg, TX. They also observed several debit credit cards in different names on the kitchen countertop. Photos of the found items were taken by property management and recovered. The checks and debit/credit cards were stored in the leasing office. On July 26, 2023, Inspector Andre recovered a plastic bag containing 60 checks and three debit and credit cards from the Marquis at The Reserved management office. Inspector Andre confirmed that none of the mail matter belonged to ROSARIO.

On August 10, 2023, Inspector Andre was referred a mail theft complaint from

14

USPS Office of Inspector General. The complaint was in reference to a Crest Operating business check #2771 that was mailed from the Richmond Post Office. The check was stolen, altered, and deposited into an unauthorized bank account. Crest Operating check #2771 was originally made out to Millenium-Windfall Partners. Crest Operating check #2771 was placed in the US Mail inside of the Richmond Post Office and was addressed to 4265 San Felipe, Suite 550, Houston, TX 77027. Bank of America (BOA) was identified as the bank of first deposit and a subpoena was served to them. BOA subpoena returns identified Virginia Aixa Morciglio as the account holder. Inspector Andre reviewed BOA ATM surveillance photos from June 5, 2023, of the Crest Operating business check #2771 deposit. Inspector Andre positively identified the male suspect conducting the deposit as ROSARIO. Inspector Andre also observed ROSARIO arrive in a black Chevrolet Impala.

On August 23, 2023, Inspector Andre made contact with Crest Operating Company via telephone. Inspector Andre ascertained Morciglio, Eaglin, and ROSARIO were not employees of Crest Operating Company and ROSARIO did not have lawful authority to be in possession of their business check. Crest Operating Company was at a loss of $7,517.73. The CFO for Crest Operating Company in Houston, TX, made a report on June 9, 2023, advising that she had dropped of 18

15

checks on May 30, 2023, at the post office located in Richmond, TX. R.H. is the operating owner of the company who approved and authorized the checks. Therefore, his name appears on the check. The CFO advised that the largest check was for $7,517.73 and was written to the order of Millenium-Windfall Partners LTD c/o Woodbranch Management. The CFO advised that the payee was changed to a woman named Virginia A. Morciglio and deposited to her account. Inspector obtained records from Bank of America, including an image of the changed check. Inspector Andre observed ROSARIO on video stills depositing the check at the bank ATM on June 5, 2023. Inspector observed ROSARIO utilizing the identification of another, specifically Morciglio, in furtherance of Bank Fraud in violation of 18 U.S.C § 1344.

On September 7, 2023, at approximately 8:41 pm, Inspector Andre received a motion sensor alert from the Richmond Post Office USPS blue collection box. The alert indicated that the access door to the collection box was opened. Inspector Andre reviewed surveillance and observed a newer model white four door Chevrolet Malibu with aluminum and black wheels drive up to the USPS mailbox. Inspector Andre observed ROSARIO exit the front passenger side door and open the USPS blue collection box with a key. ROSARIO then removed the mail from the box and dumped it in the rear passenger side window. ROSARIO then secured the USPS blue

collection box before exiting the property.

On October 4, 2023, Inspector Andre arrived at ROSARIO's most recent listed address of 6023 Blue Pansy St., Katy, TX 77449. Inspector Andre observed a newer model white four door Chevrolet Malibu with aluminum and black wheels arrive at the residence and pull into the garage. Inspector Andre observed Eaglin was the driver of the vehicle. Shortly after the vehicle arrived Inspector Andre observed ROSARIO exit the residence from the garage. ROSARIO remained outside for several minutes before going back into the residence.

Inspector Andre also received two USPS blue collection box theft complaints that occurred on or about October 3, 2023, and October 6, 2023. In both instances, mail was stolen from mailboxes that can be accessed by the same key suspect ROSARIO used during the prior observed thefts. The thefts also occurred during the nighttime, just as the prior thefts committed by ROSARIO. Additionally, both USPS blue collection boxes were located in Richmond, TX, just as the first four mailboxes that were unlawfully accessed by ROSARIO. Finally, the complaints advised the mailboxes were likely accessed with an arrow lock and no signs of forced entry were reported.

On October 25, 2023, Inspector Andre and USPIS executed a search and arrest warrant for ROSARIO's residence located within the Southern District of Texas.

17

During the search, officers located approximately 1,400 checks and 797 pieces of mail, in addition to rifled mail. ROSARIO admitted to stealing mail to get the checks, admitted to selling the checks, and agents discovered 12 arrow keys (postal keys). ROSARIO admitted to buying at least one and said he found the other ones at his "dead friend's house" while he was allegedly cleaning up.

Regarding the Aggravated Identity Theft, during the search warrant execution, Inspector Andre located an ID belonging to an actual person named Virginia A. Morciglio, and ROSARIO admitted that she was one of the people he used to commit fraud. Additionally, two firearms were located during the search: one was located in the driver's side of the vehicle ROSARIO admitted to using to commit multiple mail thefts (as recently as the evening before) and another was located in ROSARIO's pantry. Regarding the firearm in his car, ROSARIO was recorded on video at least twice committing mail thefts with the same vehicle (as the passenger), and he was observed on surveillance driving the same vehicle days before the execution of the warrant.

At the time of the offenses, ROSARIO was on supervised release for a prior mail theft offense and had prior convictions for forgery, tampering with evidence, and conspiracy to steal and possess stolen mail, possession of stolen mail, and conspiracy to defraud the US government (bank fraud).

## Breach of Plea Agreement

17.   If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, including required financial information, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

## Monetary Penalties, Assets and Financial Disclosures

18.   Defendant understands and agrees that monetary penalties will be subject to immediate enforcement as provided in 18 U.S.C. § 3613 and that monetary penalties will be submitted to the Treasury Offset Program so that payments to the Defendant may be applied to federal debts.

19.   Defendant understands that restitution, forfeiture, and fines are separate components of sentencing and are separate obligations. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to

assist fully in the collection of restitution and fines. Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, any restitution order, any forfeiture orders, and any fines.

## Restitution

20. Defendant agrees to pay full restitution to the victim(s) regardless of the count(s) of conviction. Defendant stipulates and agrees that as a result of his criminal conduct, the victim(s) incurred a monetary loss of at least $7,517.00. Defendant agrees to pay full restitution as determined by the Court, regardless of the resulting loss amount, to all victims harmed by Defendant's "relevant conduct," as defined by U.S.S.G. §1B1.3, including conduct pertaining to any dismissed counts or uncharged conduct, and regardless of whether such conduct constitutes an "offense" under 18 U.S.C. §§ 2259, 3663 or 3663A. Defendant agrees that restitution imposed by the Court will be due and payable immediately and that should the Court impose a payment schedule, the payment schedule sets forth minimum payments and does not foreclose additional collection of restitution.

## Forfeiture

21. As part of this plea agreement, Defendant agrees to the following:

(a) to forfeit, via either an administrative or judicial proceeding, all assets listed in the charging document (including any Supplemental Notice of

20

Forfeiture), and to forfeit or abandon any assets seized during this investigation or a related investigation [including but not limited to the following specific assets:];

(b) to withdraw any claims and petitions for such listed or seized assets, whether in this proceeding or another proceeding, and to waive notice of administrative proceedings (including forfeiture, destruction, and abandonment for seized property);

(c) that Defendant obtained at least _____ from the criminal offenses, that the factual basis for the guilty plea supports the imposition of a money judgment in that amount, and that the Defendant agrees to the imposition of a money judgment in that amount [or, if not agreed, that the Court will determine the proper amount of a money judgment];

(d) that one or more of the conditions set forth in 21 U.S.C. § 853(p) exists, so that the forfeiture money judgment may be immediately satisfied via forfeiture of substitute property; and

(e) to the order of forfeiture becoming final as to Defendant immediately following this guilty plea or immediately following entry of the forfeiture order, whichever applies.

### Financial Statement

22. Defendant agrees to truthfully complete under penalty of perjury, within thirty days of the execution of this Plea Agreement, a financial statement on a form provided by the United States Attorney's Office and to update the statement within seven days of any material change. Defendant also agrees to make full disclosure to the United States Probation Office of all current and anticipated assets in which Defendant has an interest both before sentencing and again before termination of supervised release or probation, with such disclosures to be shared with the United

States Attorney's Office.

23. Defendant further agrees not to dispose or transfer any assets without the prior written permission of the United States and to authorize the release of all financial information requested by the United States, including, but not limited to, credit histories and tax returns. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's financial disclosure, including in a deposition or informal debtor exam, whether before or after sentencing.

## Complete Agreement

24. This written plea agreement, consisting of 25 pages, including the attached addendum of Defendant and his attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel. Other than any written proffer agreement(s) that may have been entered into between the United States and Defendant, this agreement supersedes any prior understandings, promises, agreements, or conditions between the United States and Defendant. No additional understandings, promises, agreements, or conditions have been entered into other than those set forth in this agreement, and none will be entered into unless in writing and signed by all parties. Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

25. Any modification of this plea agreement must be in writing and signed by all parties.

Filed at ___Houston___, Texas, on ___March 28___, 2024

_____
Defendant

Subscribed and sworn to before me on ___March 28___, 2024.

NATHAN KYLE OCHSNER
UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk

APPROVED:

Alamdar S. Hamdani
United States Attorney

By: _____
Assistant United States Attorney
Southern District of Texas

_____
Attorney for Defendant

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | **CRIMINAL NO. 4:23-CR-553-S** |
| | § | |
| **DARUIN ANELBY ROSARIO** | § | |
| **Defendant.** | § | |

## PLEA AGREEMENT -- ADDENDUM

I have fully explained to Defendant his rights with respect to the pending superseding indictment. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. I have also explained to Defendant that sentences on multiple counts may be imposed to run consecutively to one another or to any other sentence. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____
Attorney for Defendant

5/28/2024
_____
Date

24

I have consulted with my attorney and fully understand all my rights with respect to the superseding indictment pending against me. My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

_____
Defendant

_____
Date